UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
–––––––––––––––––––––––––––––––––––––––––– X
SDL plc,                                   :
                                           :   18 Civ. 7799 (JMF)
                        Plaintiff,         :
                                           :   AMENDED COMPLAINT
            -against-                      :
                                           :
AVAYA INC.,                                :
                                           :
                        Defendant.         :
–––––––––––––––––––––––––––––––––––––––––– X

    Plaintiff SDL plc ("SDL" or "Plaintiff"), as and for its Amended Complaint herein against defendant Avaya Inc. ("Avaya" or "Defendant"), alleges as follows.

<u>Nature Of The Action</u>

    1.  This action arises out of Avaya's breach of an Enterprise Software License and Maintenance Agreement with Optional Hosting Facility Agreement between the parties dated as of August 31, 2006, as amended (the "Agreement"; Exhibit 1 hereto), which pertains to, <u>inter alia</u>, the licensing of SDL's translation software to Avaya.

    2.  As more fully set forth below, the Agreement limits Avaya to 1.7 million "Source Words" to be translated annually. Avaya is permitted to exceed the Source Word count by up to 7.7 million "Additional Capacity" of Source Words each year, provided that it compensates SDL therefore pursuant to the fee schedule for additional "increments" set forth in the Agreement.

    3.  However, Avaya has exceeded the Source Word count by well over 7.7 million annually over the past six years, and has failed and refused to compensate SDL therefore. "License Fees" for such over usage of Source Words, based on the fee schedule set forth in the Agreement, calculate to well in excess of $6 million, and such over usage is continuing.

    4.  Further, Avaya has failed to pay corresponding hosting and maintenance

charges that are owed due to the over usage of Source Words and the increased License Fees.

5. Nevertheless, Avaya has refused to provide any compensation to SDL relating to its over usage of Source Words, despite due demand.

### The Parties, Jurisdiction and Venue, and Governing Law

6. SDL is a company incorporated under the laws of England and Wales, with its principal place of business at New Globe House, Vanwall Road, Vanwall Business Park, Maidenhead, SL6 4UB, United Kingdom.

7. Upon information and belief, Avaya is a corporation organized under the laws of the State of Delaware, with its principal place of business at 4655 Great American Parkway, Santa Clara, CA 95054-1233. Upon information and belief, Avaya has an office at Two Penn Plaza, New York, NY 10121, and regularly and continuously conducts business in this District.

8. The amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

10. This Court has personal jurisdiction over Avaya because it has an office in this District and regularly and continuously conducts business in this District. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Avaya resides in this District, and/or pursuant to 28 U.S.C. § 1391(b)(3) because this Court has jurisdiction over Avaya in this District.

11. The Agreement provides that that "[t]he Agreement and all transactions under it shall be governed by the laws of the State of New York . . . ."

## FIRST CAUSE OF ACTION
### (Breach of Contract)

12. SDL repeats and realleges each and every allegation set forth above as if fully set forth herein.

A. <u>License Fee Owed For Over Usage Of Source Words</u>.

13. Agreement Ex. A p. 10 limits Avaya's usage of Source Words to 1.7 million words annually absent additional charges:

> "TMS base license includes 1.7 million words of English Language material (known as 'Source Words') per annum. Source Words are only considered within this allowance if the words are actually processed for translation, and not if they are matched by the translation memory process."

14. Pursuant to the foregoing provision, any and all words in any document processed or submitted by Avaya to be translated (and therefore authorized) are Source Words. Hence, if a 1,000 word document is processed or submitted for translation, it constitutes 1,000 Source Words. Significantly, there is no requirement in the Agreement that the Source Words need to be new or "net new" to count in the allowance.

15. Further, the phrase "and not if they are matched by the translation memory process" clarifies that the translated words, <u>i.e.</u> the Source Words after they are translated (often referred to as the "target"), are not counted towards the Source Word allowance, and that Avaya therefore would not be charged extra for the words as translated. Hence, if a 1,000 word document is processed or submitted for translation into eleven different languages and matched by the translation memory process, the result could be approximately 11,000 words or targets, but only the original 1,000 words – prior to any translation – would be counted as Source Words that are part of the 1.7 million allocation. The Agreement clarifies that Avaya will not be charged extra based on the number of words post-translation.

16. Thus, as set forth above, the Agreement is written to provide Avaya with an allotment of only 1.7 million Source Words to be submitted for translation each year, and then to pay extra at additional increments if Avaya processes more than 1.7 million words for translation annually, i.e., uses "additional capacity" of Source Words – up to a permitted total of 7.7 million Source Words annually. Thus, the Agreement provides for Avaya to compensate SDL for additional volumes of words submitted by Avaya each year for translation above the 1.7 million allotment.

17. Agreement Ex. A p. 11 further provides that License Fees for additional capacity are immediately due and payable: "Fees . . . for additional capacity as described in this section shall fall due immediately and shall be payable in accordance with the payment terms given in the Agreement". The "Payment Terms" at Agreement § 4.3 at p. 3 provides: "Fees shall fall due when stated in Exhibit A". Thus, Avaya was and is required to pay for additional capacity of Source Words when it exceeds the annual 1.7 million allotment.

18. Avaya exceeded the 1.7 million allotment of Source Words as follows in the following contract years, among others, with the following total Source Words used: 2012-13  10,215,321; 2013-14  12,968,237; 2014-15  20,607,793; 2015-16  14,090,475; 2016-2017 13,211,846; 2017-2018 (through July) 12,833,231.

19. Thus, Avaya has breached the Agreement by exceeding 1.7 million Source Words and failing and refusing to compensate SDL.

20. Avaya has also breached the Agreement by using in excess of 7.7 million Source Words without receiving authorization or permission from SDL.

21. Although Agreement Ex. A provides for a License Fee cap of $700,000 (of which Avaya has paid $150,000) once that amount is "reached", the cap does not apply,

and/or SDL is excused therefrom, because (i) Avaya breached the Agreement by exceeding 1.7 million Source Words and failing to compensate SDL any amounts therefore, and (ii) Avaya breached the Agreement by using in excess of 7.7 million Source Words without receiving authorization or permission from SDL.  In any event, at minimum, Avaya owes SDL a License Fee of not less than $550,000.

22. In addition, under New York law, SDL is entitled to pre-judgment interest of 9% annually calculated from the time of breach of the Agreement.

23. As set forth above, Agreement Ex. A p. 11 provides that License Fees for additional capacity are immediately due and payable.  Hence, interest became due beginning as early as 2013, when SDL failed to make immediate payment of License Fees for over usage of Source Words.

24. Thus, based on the additional License Fee alone, SDL is entitled to interest of at least $49,500 annually since 2013, or $297,500 though December 31, 2018.

B. <u>Hosting Fees Owed Due to Over Usage Of Source Words</u>.

25. Agreement Ex. A provides that the Hosting Fee is "$20,000 per annum, fixed with regard to usage, capacity limits, number of authorized users and number of Author Assistant licenses or SDL Trados licenses."

26. "Capacity limits" are defined to be 1.7 million Source Words. Hence, Avaya owes Hosting Fees of $20,000 for each capacity limit, or allotment, of 1.7 million Source Words.

27. Thus, "banding" the Hosting Fee at $20,000 for each capacity limit of 1.7 million words, amounts owed are as follows:

Up to 1.7M words Hosting Fee = 20k
Up to 3.4M words Hosting Fee = 40k

Up to 5.1M words Hosting Fee = 60k
Up to 6.8M words Hosting Fee = 80k
Up to 8.5M words Hosting Fee = 100k
Up to 10.2M words Hosting Fee = 120k
Up to 11.9M words Hosting Fee = 140k
Up to 13.6M words Hosting Fee = 160k
Up to 15.3M words Hosting Fee = 180k
Up to 17M words Hosting Fee = 200k
Up to 18.7M words Hosting Fee = 220k
Up to 20.4M words Hosting Fee = 240k
Up to 20.4M words Hosting Fee = 240k

28. Hence, based on the foregoing bands and Avaya's over usage of Source Words, Hosting fees owed since January 1, 2013 are as follows:

2013 – 10.2M words = Hosting Fee 120k
2014 – 12.9M words = Hosting Fee 160k
2015 – 20.6M words = Hosting Fee 240k
2016 – 14M words = Hosting Fee 160k
2017 – 13.8M words = Hosting Fee 160k
2018 (so far) 12.8M words = Hosting Fee 160k
Total = $1,000,000 (minus 120,000 paid) = $880,000

C. <u>Maintenance Fees Owed Due To Over Usage Of Source Words</u>.

29. Agreement Ex. A provides that the Maintenance Fee is "$22.500 per annum variable in accordance with the terms of this Agreement".

30. The Maintenance Fee of $22,500 is 15% of the original License Fee of $150,000.

31. This 15% figure is consistent with other sections of the Agreement Ex. A setting maintenance at 15% of the License Fees (<u>see</u> provisions regarding Multiterm client licenses and SDL Trados 2006 referencing 15%).

32. Further, as the Maintenance Fee is "variable in accordance with the terms of the Agreement", if the License Fee increases in accordance with the terms of the Agreement due to over usage of Source Words, the Maintenance Fee correspondingly increases as well.

33. Accordingly, consistent with the foregoing, and as is custom in the industry, once the License Fee increases the Maintenance Fee increases so that it remains 15% thereof.

34. Thus, by way of example only, if the License Fee increases by $550,000 to $700,000, an additional 15% in Maintenance is owed annually on the additional $550,000 License Fee, or $82,500 per year. Hence, for 2013-2018, the Maintenance Fees owed are not less than $495,000 (6 years x $82,500 per year), and are correspondingly higher if the License Fee due is higher, as alleged by SDL herein.

*   *   *

35. Avaya has continued to refuse to pay any amounts to SDL for its over usage of Source Words, or amounts owed for Hosting and Maintenance, despite due demand.

36. SDL substantially performed its obligations under the Agreement.

37. As a consequence of the foregoing, SDL has been damaged in an amount to be determined at trial, in an amount not less than $2,222,500 ($550,000 + $297,500 + $880,000 + $495,000), but believed to be in excess of $7 million, plus interest, costs and attorneys' fees as allowable by law.

SECOND CAUSE OF ACTION<br>(Unjust Enrichment, in the alternative)

38. SDL repeats and realleges each and every allegation set forth above as if fully set forth herein.

39. Avaya's use, receipt, and retention of Source Words in excess of 1.7 million annually, as well as SDL's Hosting and Maintenance services supporting in excess of 1.7 million Source Words annually, and the amounts due therefore, without paying SDL the amount due, has conferred an unearned and undeserved benefit upon Avaya, allowing Avaya to enrich

itself unjustly and at the expense of SDL. It is against equity and good conscience for Avaya to retain such sums and/or benefits without compensation to SDL.

40. Accordingly, as a consequence of the foregoing, SDL has been damaged in an amount to be determined at trial, in an amount not less then $2,222,500, but believed to be in excess of $7 million, plus interest, costs and attorneys' fees, as allowable by law.

WHEREFORE, SDL demands judgment as follows:

(i) On the First Cause of Action, an amount to be determined at trial, in an amount not less than $2,222,500, but believed to be in excess of $7 million, plus interest, costs and attorneys' fees as allowable by law;

(ii) On the Second Cause of Action, an amount to be determined at trial, in an amount not less than $2,222,500, but believed to be in excess of $7 million, plus interest, costs and attorneys' fees as allowable by law; and

(iii) for such other and further relief as the Court deems just and proper.

Dated: New York, New York
October 30, 2018

SULLIVAN & WORCESTER LLP

By: /s/ Gerry Silver
Gerry Silver
1633 Broadway, 32nd Floor
New York, New York 10019
Telephone: (212) 660-3096
Facsimile: (212) 660-3001
gerry.silver@sandw.com

Attorneys for Plaintiff SDL plc